CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
1/5/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JOHN E. LONEWOLF,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 5:18-cv-00004 |
| v. ) | |
| ) | |
| **SGT. STEVE GARRETT, individually and in** ) | |
| **his capacity as an employee of Rockbridge** ) | |
| **Regional Jail** ) | |
| **and** ) | **JURY TRIAL DEMANDED** |
| **JOHN HIGGINS, individually and in his** ) | |
| **capacity as the former superintendent of** ) | |
| **Rockbridge Regional Jail** ) | |
| ) | |
| **Defendants** ) | |

## COMPLAINT

Plaintiff John E. Lonewolf (herein "Lonewolf" or "Plaintiff") upon information and belief alleges the following:

### INTRODUCTION

1) This civil rights action seeks compensatory and punitive damages from Defendants for egregious physical and psychological injuries inflicted upon Plaintiff while incarcerated at the Rockbridge Regional Jail by another prisoner as a result of Defendants' deliberate indifference to Plaintiff's safety, specifically, and the safety of all prisoners in their care, generally. Plaintiff asserts herein that Defendant Sgt. Steve Garrett deliberately or recklessly exposed him to harmful assault from other inmates by announcing his child sex offender status in the presence of other inmates and disregarding Plaintiff's stated concerns about his own safety during Plaintiff's booking on October 30, 2012. Plaintiff was assaulted later that evening in an overcrowded cell block by an inmate who targeted Plaintiff due to his child sex offender status. The assault continued for more than an hour without intervention by prison officials due to Defendant John Higgins' deliberate indifference to prison conditions which included extreme overcrowding, lack of adequate security mechanisms within the prison,

failure to train and ensure the compliance of prison officials with minimum standards established by the Virginia Bureau of Corrections, and failure to train prison officials in dealing with the particular threats faced by sex offenders in prison. The Defendants' actions and omissions directly and proximately resulted in the objectively serious deprivation of Plaintiff's right to be free from cruel and unusual punishment and the denial of the minimal civilized measures of life's necessities.

## JURISDICTION AND VENUE

2) This case arises under the Eighth Amendment of the US Constitution, 42 U.S.C. 1983, and 28 U.S.C. §1343. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.

3) Plaintiff filed this action on October 31, 2013 and voluntarily dismissed without prejudice the complaint via joint stipulation dated July 6, 2017. This action is filed within the six-month period allowed by Va. Code §8.01-229(E)(3). See <u>Scoggins v. Douglas</u>, 760 F.2d 535 (4th Cir. 1985)

4) Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Virginia.

## PARTIES

5) This complaint alleges that the civil rights of the Plaintiff, John E. Lonewolf, who presently resides at 21 Meade Park Circle, Lot 6, Verona, Virginia, were violated by the actions of the below named individuals which were directed against the Plaintiff while he was incarcerated at Rockbridge Regional Jail in Lexington, Virginia on October 30, 2012.

6) Defendant Sgt Steve Garrett (herein "Defendant Garrett") was employed at Rockbridge Regional Jail at all relevant dates described herein and is sued in his individual capacity and his official capacity acting as a state employee under color of law.

7) Defendant John Higgins was Superintendent of the Rockbridge Regional Jail at all relevant dates described herein and is sued in his individual capacity and his official capacity acting as a state employee under color of law.

## FACTS ABOUT ASSAULT ON PLAINTIFF

8) Plaintiff was convicted of aggravated sexual assault of a child in Illinois in 1991 for which he had been required to register as a sex offender for ten years.

9) Plaintiff was convicted of a drug offense in 2012 and transferred to serve his sentence at Rockbridge Regional Jail (herein "Rockbridge") on October 30, 2012.

10) On October 30, 2012 Defendant Garrett booked Plaintiff into the Rockbridge under his birth name "Earl William Giger, causing Lonewolf to protest that he legally changed his name to "John Earl Lonewolf" in April 2012, which visibly and audibly angered Defendant Garrett.

11) After Lonewolf insisted his new name be used for booking, Defendant Garrett refused and loudly announced that Lonewolf needed to be registered as a sex offender for raping a nine year old girl; however, that was not the sex offense of which Lonewolf had been convicted.

12) Defendant Garrett's announcement about Lonewolf's sex offender status was made in the audible presence of two inmates who were "Trustys" going to and from rooms near the booking station.

13) Lonewolf pointed out that he was afraid for his safety because the two inmates heard Defendant Garrett, who then refused Lonewolf's request to not be placed in general population, arguing that Lonewolf had been incarcerated in general population at Rockbridge before without problems, and threatened Lonewolf with solitary confinement.

14) Garrett placed Lonewolf in cell block 525, wherein two inmates were designated "Floor 1" and "Floor 4" on the Housing Report for that day (See Exhibit A), presumably due to

the documented history of overcrowding at Rockingham. Although listed as Bed "B" in cell "532," Lonewolf set up his bed on the floor.

15) An inmate named Joel Copper (herein "Copper") was also housed in cell block 525, cell 531 on the day Lonewolf was booked. While an inmate at Rockbridge in July 2010, Copper viciously assaulted an inmate named Fabian Schlegel because he felt Schlegel was a child rapist, and Defendant Garrett's wife, also a prison guard there, filed a witness report. (See Exhibit B)

16) Copper stated to Defendant Garrett on or around August 18, 2012 that he did not want to be housed with child sex offenders due to his own personal history with them and violent reactions. Shortly after that time and before Lonewolf was booked at Rockbridge, Copper caused to be moved from his cell block another presumed child sex offender, and again told Detective Garrett of his extreme discomfort around them.

17) Copper learned of Lonewolf's sex offender history from other inmates at Rockbridge within hours after his arrival in cell block 525 and confronted Lonewolf alone in the cell where Lonewolf lay in his bed on the floor shortly after 8:00pm medications were given.

18) Upon entering the cell, Copper shut the door which also locked it, he called Lonewolf by "Hinger," "Hanger," or "Giger," and demanded Lonewolf tell him about his child sex offense.

19) Without physical provocation and while Lonewolf was still on the floor, Copper began repeatedly, and shod with boots, kicking his face, head, chest and abdomen. Copper also stomped Lonewolf's hands anytime he tried to get up from the floor, and slammed his head into the wall repeatedly. Lonewolf lost consciousness at least once for a short time. The assault continued for an hour and a half until Copper picked Lonewolf up by his beard and threatened to kill him if he told anyone who beat him.

20) At approximately 9:50pm, the guards on duty, including Defendant Garrett's wife, discovered Lonewolf barely conscious and bloody in his cell, after which he told them

about Copper and was given medical treatment before being transported to the hospital emergency department.  (See Exhibit C)

21)     As a result of Copper's assault, Lonewolf sustained multiple permanent and painful injuries to his left eye, left ocular ridge, left parietal skull, maxilla, mandible, palate, spleen, two ribs, left lung and both intestines. Lonewolf's injuries required him to be hospitalized from the date of his assault until February 2013, and he has endured several costly surgical procedures, although he still suffers from the physical effects of his injuries. Additionally, the terror Lonewolf experienced being trapped and beaten for more than an hour has caused mental and emotional trauma to him and his wife, who was unable to work and lost her employment after learning of the vicious assault on Plaintiff.

## FACTS ABOUT ROCKBRIDGE REGIONAL JAIL

22)     Defendant Higgins became Superintendant of Rockbridge in October 2000 and retired in March 2017 amidst a state and federal investigation of Rockbridge which began in February 2017 following an inmate complaint about violence which led the Rockbridge County Sheriff's Office to learn about "several instances of alleged assault involving multiple inmates in the sex offenders' block."  (See Exhibit D)

23)     According to several news reports, as well as the 2013 Virginia Board of Corrections Jail Bed Capacity Report for 2012 (See Exhibit E), Rockbridge has a rated capacity of fifty-six inmates, but due to overcrowding has regularly housed more than 100 inmates by double-bunking in cells and having inmates sleep on the floor when a bunk was unavailable.  In August 2012, Rockbridge reported having 108 inmates but only 102 available beds, and an average daily population through 2012 of 103 inmates.

24)     At the time Plaintiff was assaulted, Rockbridge had a camera security system which did not record and had blind spots where guards who may be monitoring from a control room cannot view what is occurring.

25) The Virginia Administrative Code in effect at the relevant time provides minimum standards for correctional facilities and specifically requires that:

> "The facility shall provide for 24-hour supervision of all inmates by trained personnel.  <u>All inmate housing areas shall be inspected a minimum of twice per hour at random intervals between inspections.</u>  All inspections and unusual incidents shall be documented.  No obstructions shall be placed in the bars or windows that would prevent the ability of jail staff to view inmates or the entire housing area."  6 VAC 15-40-1040 (<u>emphasis added</u>) (replaced by 6VAC-40-1045, effective November 22, 2012)

26) According to the <u>Compliance Documentation for Jails</u> (created by the Virginia Board of Corrections and interpreted a part of the minimum standards established in the Virginia Administrative Code), compliance with 6 VAC 15-40-1045 (previously -1040) requires documentation of random checks, and defines "inspection" to be "visual observance of all inmates in the housing area including linear, indirect and direct supervision." (See Exhibit F)

## COUNT I
### Cruel and Unusual Punishment vs. All Defendants
### Eighth Amendment; 42 U.S.C. §1983

27) Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

28) As described more fully above, Defendants were aware or should have been aware of the security and overcrowding issues that existed at Rockbridge at the time Plaintiff was assaulted.

29) Specifically, Defendants were aware or should have been aware that inmates guilty of or accused of child sex offenses face a greater risk of inmate assault, and those assaults tend to be more violent.

30) Defendants' deliberately indifferent actions and omissions directly and proximately directly and proximately resulted in unreasonable, unnecessary, unjustified and egregious physical injuries and emotional pain and suffering to Plaintiff.

## COUNT II
**Failure to Protect vs. Defendant Garrett**
**Eighth Amendment; 42 U.S.C. §1983**

31)     Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

32)     As more fully described above, Defendant Garrett unconstitutionally failed to protect Plaintiff's safety by creating or worsening conditions for Plaintiff in Rockbridge that posed a substantial risk of serious harm by deliberately, unnecessarily and maliciously allowing other inmates to learn of Plaintiff's child sex offense history.

33)     Defendant Garrett exhibited deliberate indifference to a substantial risk to Plaintiff's safety by disregarding Plaintiff's concerns about other inmates learning of his child sex offense history, including Defendant Garrett's deliberate and malicious inaccuracy about Plaintiff's sex offense that lowered the age of alleged victim and increased the severity of the crime from molestation into rape.

34)     Defendant Garrett exhibited deliberate indifference to a substantial risk to Plaintiff's safety by housing Plaintiff with an inmate who violently assaulted at least one other inmate because it was believed the victim was a child rapist, and who repeatedly expressed to Detective Garrett his violent tendencies concerning child sex offenders.

35)     Defendant Garrett's deliberately indifferent actions and omissions directly and proximately directly and proximately resulted in unreasonable, unnecessary, unjustified and egregious physical injuries and emotional pain and suffering to Plaintiff.

## COUNT III
**Failure to Protect vs. Defendant Higgins**
**Eighth Amendment; 42 U.S.C. §1983**

36)     Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

37) Defendant Higgins' had a duty to ensure the safety of inmates at Rockbridge and to follow the minimum standards established by the Board of Corrections in order to fulfill that duty.

38) Pursuant to the minimum standards, Defendant Higgins was required to train and monitor correctional officers to Rockbridge to ensure they were inspecting all inmate housing areas twice per hour.

39) Defendant Higgins failed to ensure these inspections occurred because had these inspections occurred, Copper would not have been able to continue his assault of Plaintiff for one and a half hours in a locked cell.

40) Defendant Higgins knew or should have known of the pervasive risk of harm faced by inmates at Rockbridge, particularly those thought to have committed child sex offenses.

41) Whereas Rockbridge now has a "sex offenders block" which did not exist at the time of Plaintiff's assault, Defendant Higgins knowledge of the safety risk faced by sex offenders is evident and undeniable.

42) Defendant Higgins failed to train and supervise his correctional officers in how to protect the safety of sex offender inmates and how to avoid increasing the already existent risk of assault against sex offenders.

43) By allowing extreme overcrowding, as well as maintaining an outdated security camera system with blind spots and no recording capability, Detective Higgins allowed a pervasive risk of harm to permeate Rockbridge in deliberate indifference to inmate safety.

44) Detective Higgins' acts and omissions exhibited a deliberate indifference to the substantial risk of harm faced by Plaintiff which directly and proximately resulted in unreasonable, unnecessary, unjustified and egregious physical injuries and emotional pain and suffering to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on all Counts awarding compensatory and punitive damages in the

amount of $950,000, as well as attorneys' fees, and costs and such other and further relief as the Court deems just and warranted.

                                              Respectfully submitted,
                                              John E. Lonewolf, Plaintiff

                                              By:   /s/ Nicholas A. Hurston
                                              Plaintiff's Counsel

Nicholas A. Hurston (VSB #86717)
Law Offices of Little & Hurston, PLLC.
562 Calvert St., Suite C
Staunton, VA 24401
Telephone:  (540) 886-0440
Facsimile:  (540) 886-8008
hurstonlaw@gmail.com
*Counsel for Plaintiff, John E. Lonewolf*